**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SCOTT JENKINS,**

**Plaintiff,**

**vs.**

**MICHAEL MCHANEY, KIMBERLY KOESTER, JOHN J. FLOOD, STATE OF ILLINOIS, KATHY EMERICK, SHERRI GADD, FAYETTE COUNTY COURT, DAVE CATES, CATES LAW FIRM, JOSEPH BLEYERS, BLEYERS LAW FIRM, FIRST VANDALIA CORP., WILLIAM ERNEST CHAPPEL ESTATE, CITY OF VANDALIA IL, JACK JOHNSTON, JOHNSTON LAW FIRM, and DOUGLAS JARMAN,**

**Defendants.**

**Case No. 22-cv-2128-DWD**

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

This is the latest lawsuit involving *pro se* Plaintiff Scott Jenkins ("Jenkins") stemming from allegations that Jenkins was tricked into deeding his multimillion-dollar entertainment facility known as "Twisters" to the First Vandalia Corporation (the entity that operated First National Bank of Vandalia through which Jenkins obtained a loan and line of credit to build the entertainment facility) ("the Bank"). Jenkins has also filed a motion for leave to proceed *in forma pauperis* ("IFP").

In order to allow Jenkins to proceed without paying the $402 filing fee, the Court must first decide whether he has the ability to pay the filing fee and whether the lawsuit

states a claim for relief. 28 U.S.C. §§ 1915(a), (e)(2)(B). Then, the Court must dismiss the action if it is "frivolous or malicious," fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

## I. Background

On June 14, 2013, Jenkins, represented by attorney Dave Cates and the Cates Law Firm,[1] filed a multi-count suit in the Circuit Court of the Fourth Judicial Circuit in Fayette County, Illinois (Fayette County Court Case No. 13-L-10) ("State-Court Case"). The complaint alleged that the Bank's President, William Ernest, delivered a fraudulent "closure letter" to Jenkins indicating that the mayor of Vandalia, Illinois had ordered Twisters closed.[2] Jenkins claims that, relying on the fraudulent letter, he deeded Twisters to the Bank. The State-Court Case, which is ongoing, was removed to the Southern District of Illinois in January 2014 when Jenkins filed an Amended Complaint purportedly bringing claims pursuant to 42 U.S.C. § 1983. *See Jenkins et al., v. First Vandalia Corp., et al.,* Case No. 14-cv-00004-MJR. The case was eventually remanded to the Fayette County Circuit Court upon a finding of lack of jurisdiction. *Jenkins,* Case No. 14-cv-00004-MJR/DWD (Doc. 65).

[1] The public docket in Jenkins' state-court case indicates that a complaint was filed on June 14, 2013 and that on July 30, 2013, David Cates entered an appearance on behalf of Jenkins and co-plaintiff Jenkins' Displays Co. (Jenkins is the president and owner of Jenkins' Displays Co.) Although not entirely clear, Jenkins appears to dispute Cates' role in the state-court case. *See e.g.,* Doc. 17 ¶ 13.2 ("On June 14, 2013, the Cates Law Firm purportedly commenced this action by filing a complaint…However, no filed Entry Appearance document exists within either of my Purported Accurate Appeal Records").

[2] *See Jenkins et al., v. First Vandalia Corp., et al.,* Case No. 14-cv-00004-DWD (S.D. Ill., Jan. 3, 2014) (Doc. 2-1).

Thereafter, aside from the instant case, claims connected to Jenkins' State-Court Case have been brought in the Southern District of Illinois on two occasions: (1) *Jenkins et al., v. Fayette County Circuit Court*, No. 3:21-cv-434-MAB (alleging that by order of the trial judge in Jenkins' State-Court Case, Jenkins and his company had been prohibited from filing in the case, and raising allegations of public record tampering) and (2) *Jenkins et al., v. First Vandalia Corp. et al.*, No. 22-cv-991-SMY (Jenkins' purported "removal" of his State-Court Case, following the denial his motion to reopen Case No. 14-cv-00004-MJR/DWD).

**II. Second Amended Complaint**

Jenkins brings a hodgepodge of claims against the State of Illinois; the Fayette County Circuit Court and its employees, including the judge presiding over his case and the Chief Judge; the Clerk of Court for the Fifth District Appellate Court, the City of Vandalia; and various individuals and entities associated with Jenkins' State-Court Case. Jenkins contends that the defendants conspired against him to deprive him of his constitutional rights in violation of 42 U.S.C. § 1983, engaged in a pattern of racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988), and committed other acts of fraud in connection with his State-Court Case. For instance, Jenkins claims that various defendants falsified public records, intentionally or illegally withheld information from Jenkins and from the public, and otherwise acted fraudulently. Jenkins further alleges that individuals associated with the Fayette County Circuit Court and with the Illinois Appellate Court violated his constitutional rights by (1) treating certain matters, pleadings, and transcripts as

confidential and by allowing them to be sealed, secured, impounded, or handled *ex parte*; (2) allowing Judge McHaney to preside over the State-Court Case and failing to remove or disqualify Judge McHaney as the presiding judge; (3) failing to require Chief Judge Kimberly Koester to recuse herself from matters relating to removing Judge McHaney from the State-Court Case; (4) allowing Judge Michael McHaney's to enter an order finding that Jenkins would be found in contempt if he filed any pleadings other than a notice of appeal; and (5) maintaining fraudulent circuit court and appellate court dockets.

Common to all theories of relief is the assertion that the defendants alleged misconduct rendered the proceedings in his State-Court Case void. The only relief Jenkins expressly requests is for the Court to "assume jurisdiction over [his] Complaint" and to stay "further proceedings in the Fayette County Circuit Court, if possible." (Doc. 17, p. 47). Liberally construed, the Second Amended Complaint also includes a request for declaratory relief, seeking an order invalidating the proceedings in Jenkins' State-Court Case.

Both the Second Amended Complaint and publicly available records reveal that the State-Court Case is ongoing. In his pleading, Jenkins acknowledges that he is currently pursuing an appeal. (Doc. 17, ¶¶ 13.26-13.29). Further, the public docket sheet indicates that Jenkins, through counsel, filed a Notice of Appeal on April 5, 2023.[3]

## III. Preliminary Matters

[3] According to the public docket sheet, the most recent activity in Jenkins' State-Court Case was on May 3, 2023. The docket indicates that, on this date, the Illinois Appellate Court filed a docketing statement and a request for transcripts was submitted to the Chief Judge. https://www.judici.com/courts/cases/case_history.jsp?court=IL026015J&ocl=IL026015J,2013L10,IL026015JL2013L10P2 (last visited May 4, 2023).

**A. Filing Fee Issue in Prior Case**

In his Second Amended Complaint, Plaintiff contends that he was improperly charged a filing fee in Case No. 22-cv-991-SMY. That argument is not properly raised in the instant litigation. To the extent that Plaintiff contends he was improperly charged a filing fee in Case No. 22-cv-991-SMY, he must file a motion in that case.

**B. Fraud on the Court**

The Second Amended Complaint includes allegations suggesting that the Defendants have committed various criminal violations, including "fraud upon this court's Bankruptcy Division" and "Defrauding the Federal Reserve." These allegations appear to be included as another alleged basis for the undersigned to find that decisions and orders rendered in Jenkins' State-Court Case are void, and not as independent causes of action. Nonetheless, even if Jenkins is attempting to bring a claim against one or more defendants for violations of unspecified criminal statutes, those claims would be subject to dismissal. Criminal statutes generally do not provide a basis for civil liability, *see Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver*, N.A., 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"), and Jenkins has not cited to any specific criminal statute that would convey a private right of action for the various allegations of fraud scattered throughout the Second Amended Complaint. Further, as previously noted, the only relief Jenkins seeks is an order enjoining his ongoing State-Court Case and/or an order declaring the proceedings void. As such, the abstention principles discussed below are applicable to all claims raised in the Second Amended Complaint.

## IV. Motion to Proceed *in Forma Pauperis*

On the question of indigence, although Plaintiff need not show that he is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), it must be remembered that the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

Plaintiff avers that he is unemployed and that he receives a total of $999.00 a month from Social Security (Doc. 6). He further indicates that he has a total of $1,000.00 in a savings account and that he owns a '99 Buick Lesabre. *Id.* Jenkins states that he has no monthly bills, no mortgage, no dependents, and does not list any other debts or financial obligations. The Court finds that Plaintiff is not indigent and will deny Plaintiff's motion for leave to proceed *in forma pauperis*.

## V. Complaint Screening

### A. Standard of Review

Aside from considering whether an individual meets the financial requirements for relief, in reviewing applications to proceed *in forma pauperis* , the district court is required to screen a plaintiff's complaint and determine whether the action is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Jenkins' favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir.

2013). In addition to considering allegations contained in the Second Amended Complaint, the Court may take judicial notice of public records, including court documents. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

**B. Analysis**

***1. Anti-Injunction Act***

Where, as here, a federal litigant seeks to enjoin a state court proceeding, the Anti-Injunction Act is implicated. Pursuant to the Act, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. 2283. "The Act is designed to prevent unnecessary friction between state and federal courts and to protect state courts from federal interference." *Ramsden v. AgriBank, FCB,* 214 F.3d 865, 868 (7th Cir. 2000). *See also O'Keefe v. Chisholm*, 769 F.3d 936, 939 (7th Cir. 2014) ("The Anti–Injunction Act embodies a fundamental principle of federalism: state courts are free to conduct their own litigation, without ongoing supervision by federal judges…").

Jenkins ties his allegations to § 1983, which is a recognized exception to the Anti-Injunction Act, *Mitchum v. Foster*, 407 U.S. 225, 243 (1972). Thus, to the extent that he has brought viable § 1983 claims, his suit is not barred outright by the Act. But it is also not automatically permitted. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151 (1988) ("The fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue.") (emphasis in original). As to these claims, in determining whether abstention is warranted, the Court must look to principles of "equity, comity, and federalism."

*Mitchum*, 407 U.S. at 243. *See also Tibor v. Kane County, Ill.*, 485 Fed.Appx. 840, 841 (7th Cir. 2012) ("Although suits under § 1983 are not strictly governed by § 2283, they may proceed only to the extent allowed by the principles of *Younger v. Harris*, 401 U.S. 37 (1971), and its successors.")

Here, the Court finds that, to the extent Jenkins' claims do not arise under § 1983, they do not fall under any of the stated exceptions to the Anti-Injunction Act. Jenkins alleges that decisions rendered to date in his State-Court Case are void. Therefore, Jenkins asks this Court to assume jurisdiction over his case and stay his ongoing state proceedings. In effect, Jenkins is asking this Court to act as an appellate forum for state court decisions with which he disagrees. But the Anti-Injunction Act does not give this Court the authority to act as an appellate forum for state court decisions. *Atlantic C.L.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970) (lower federal courts "were not given any power to review directly cases from state courts"). If Jenkins disagrees with orders issued in his State-Court Case, the appropriate forum is an appeal within the state system. *Id.* ("Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief in error, if any, through the state appellate courts."). And, as previously indicated, Jenkins is currently pursuing an appeal.

To the extent that Jenkins has alleged viable claims under § 1983,[4] the Court finds that principles of equity, comity, and federalism demonstrate that this case does not

[4] The Court notes that Jenkins faces numerous obstacles in this regard. Many of the defendants named in his lawsuit are immune from suit and/or are not appropriate defendants with respect to an action under § 1983.

present a situation where it would be appropriate to displace the ongoing state proceedings. The Court addresses the applicable principles in turn below.

**2. *Younger v. Harris***

As to all claims being asserted, Jenkins is seeking to reverse, amend, or otherwise enjoin the effects of orders entered in his ongoing State-Court Case. As such, Jenkins' Second Amended Complaint implicates the abstention principles of *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana,* 502 F.3d 590, 595 (7th Cir. 2007). *Younger* involved a pending state criminal prosecution, 401 U.S. at 40–41, 91 S.Ct. 746, but the Supreme Court later extended the doctrine to certain state civil proceedings, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Over the years, "federal courts expanded [the doctrine] and abstained too frequently, so the Supreme Court reined in that expansion." *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 890 (3d Cir. 2022).

The Supreme Court's most recent guidance on *Younger's* domain is found in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013). In *Sprint*, the Supreme Court cautioned that "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." 571 U.S. at 72. Rather, *Younger* abstention is only appropriate when a case involves one of three "exceptional circumstances": (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial

functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). "If one of these three types of proceedings is involved, then the court must consider three additional factors: whether the state proceeding is ongoing, involves important state interests, and provides an adequate opportunity to raise constitutional challenges." *Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at *2 (7th Cir. Jan. 17, 2023).

Here, the Court considers whether Jenkins' State-Court Case fits within the third category identified in *Sprint*: "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. This category recognizes states have important interests in "administering certain aspects of their judicial systems" and "enforcing the orders and judgments of their courts." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 12-13 (1987). *See also Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022) ("federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their [orders and] judgments."); *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945 948-49, (11th Cir. 2015) (collecting cases, finding that abstention is appropriate when a federal court would interfere with the state court's administration of its duties or ability to enforce its orders).

In *Sprint*, the Supreme Court referenced two cases as examples of proceedings warranting abstention under the third category of proceedings: (1) *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) and (2) *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). ***Sprint***, 571 U.S. at 78. In *Juidice*, the plaintiffs asked the federal court to enjoin state contempt proceedings as unconstitutional. The Supreme

Court determined that abstention was required, explaining that "[a] state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest." *Juidice,* 430 U.S. at 335. Additionally, the Court noted that federal-court interference with the state's contempt process "not only 'unduly interfere(s) with the legitimate activities of the stat(e),' but also 'can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Id.* at 336 (quoting *Huffman*, 420 U.S. at 601).

In *Pennzoil Co. v. Texaco*, 481 U.S. 1 (1987), a state court jury rendered a verdict in favor of Pennzoil and against Texaco. 481 U.S. at 5-6. Before the trial court entered judgment, Texaco filed suit in federal district court, seeking to enjoin Pennzoil from taking any action to enforce the judgment. *Id.* Texaco argued that state court bond procedures, which would require Texaco to post a 13-billion-dollar bond pending appeal, were unconstitutional. The district court granted injunctive relief and the Second Circuit affirmed. But the Supreme Court found the lower courts should have abstained, explaining that "the district court's decision implicated a vital state interest in that "States have important interests in administering certain aspects of their judicial systems." *Id.* at 12-13. The Supreme Court then compared the case to *Juidice,* reasoning that "both [cases] involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the executions of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." *Id.* at 12–15, 107 S.Ct. 1519.

The Seventh Circuit most recently addressed the third category of "exceptional circumstances" discussed in *Sprint* in *Doe v. Lindell*, No. 22-1666, 2023 WL 196467 (7th Cir. Jan. 17, 2023). In *Lindell*, the plaintiff sued individuals involved in her state-court divorce and custody proceedings, including her ex-husband, the court-appointed guardian ad litem, and the judge, for conspiring to deprive her and her minor children of their rights to familial relations and to a fair and unbiased fact finder. *Id.* at 1. The plaintiff also filed a petition for contempt in the state-court proceedings against various individuals involved in the case, which had been denied. The district court ruled that, because the plaintiff had petitioned in state court for a contempt order against the defendants based on their "unlawful conspiracy," it was required to abstain. The Appellate Court agreed, explaining that the third category of cases requiring abstention under *Younger* includes cases "involving the contempt process." *Id.* at 2-3.

Other recent decisions finding that abstention was warranted under the third category of cases identified in *Sprint* include: (1) *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cty.*, 805 F.3d 425, 427–28 (2d Cir. 2015) (state-court proceeding involving an order requiring a parent to pay half of the fees of an attorney appointed to represent children in a divorce proceeding); (2) *Silver v. Court of Common Pleas of Allegheny Cty.*, 802 F. App'x 55, 58 (3d Cir. 2020) (constitutional challenge to a gag order issued in a child custody case); *Aaron v. O'Connor*, 914 F.3d 1010 (6th Cir. 2019) (state-court proceeding involving decisions on recusal); and *Gristina v. Merchan*, 2022 WL 1597732 (S.D.N.Y. May 19, 2022) (state-court proceeding involving orders to seal or unseal certain transcripts).

With these principles in mind, the Court finds that Jenkins' State-Court Case fits within the third category of "exceptional circumstances" identified in *Sprint*. First, Jenkins challenges the Fayette County Circuit Court's order or orders providing that he would be held in contempt if he continued to file certain papers on the court's docket. These claims fall squarely within the scope of *Younger* abstention. *See Juidice v. Vail*, 430 U.S. 327 (1977); *Doe v. Lindell*, No. 22-1666, 2023 WL 196467 (7th Cir. Jan. 17, 2023).

Second, Jenkins brings claims pertaining to decisions and/or procedures involving judicial assignment, recusal, and/or disqualification. Specifically, Jenkins objects to the way the presiding state-court judge was assigned to his case and to subsequent decisions denying his requests to have the presiding judge removed from the case. The Sixth Circuit Court of Appeals addressed similar challenges in in *Aaron v. O'Connor*, 914 F.3d 1010 (6th Cir. 2019). In *Aaron*, the plaintiffs brought federal due process claims and sought to enjoin a state court from acting in a case before their request for disqualification of the judge presiding in their state court case could be ruled on. *Id.* at 1014. The Sixth Circuit found abstention was appropriate under the third *Sprint* category because a state's ability "to determine when recusal of a judge or justice is appropriate and to administer the recusal decision process in accordance with state law operates uniquely in furtherance of the state court's ability to perform their judicial functions." *Id.* [5]

---

[5] Other circuit courts have applied *Younger* abstention in analogous cases. *See* e.g., *Strand v. Dawson*, 468 F. App'x 910, 911 (10th Cir. 2012) (affirming district court's dismissal on *Younger* grounds of suit against state court judge who "refused to recuse himself in a pending state court eviction action involving Plaintiffs"); *Shapiro v. Ingram*, 207 F. App'x 938, 940 (11th Cir. 2006) (finding that abstention was appropriate where plaintiff sought to overturn state

The undersigned agrees with the Sixth Circuit's reasoning in *Aaron*. The ability of state courts in Illinois to determine how judges are assigned to cases and when recusal or disqualification is appropriate pursuant to Illinois law directly implicates core "civil administrative processes, powers, and functions" of Illinois courts. *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022). Resolving Jenkins' claims pertaining to judicial assignment and recusal would interfere with this process and would constitute an undue interference with Illinois' legitimate activities. *Juidice v. Vail*, 430 U.S. 327, 335-36 (1977). Further, issuing an order finding that the presiding judge was improperly assigned to Jenkins' State-Court Case or that the recusal process was handled improperly would interfere with the Fayette County Circuit Court's ability to enforce its judgments, and "would do so on grounds that challenge the very process by which those judgments were obtained." *Pennzoil,* 481 U.S. at 15.

The same reasoning applies to Jenkins' allegations that the state court violated his constitutional rights by allowing certain pleadings, transcripts, and hearings to be secured, impounded, or sealed and by allowing certain hearings to proceed *ex parte*. The power to treat certain matters as confidential, by allowing records to be sealed or proceeding *ex parte*, is an essential judicial function. Indeed, courts have the "inherent power to control [their] files and to impound any part of a file in a particular case." *Deere*

court judge's failure to recuse herself as well as her contempt finding, noting that injunction would have required district court to direct state court judge "to reverse her prior rulings, effectively telling the state court how to run its contempt proceeding"); *Gilbert v. Ferry*, 401 F.3d 411, 419 (6th Cir. 2005) (concluding that Younger demanded abstention where plaintiffs sought a federal-court declaration that the failure of four justices of the Michigan Supreme Court to recuse themselves from an ongoing state-court cases violated the plaintiffs' constitutional rights). These decisions, however, were rendered prior to the Supreme Court's decision in *Sprint*, and whether these courts considered the three categories of "exceptional circumstances" prior to abstaining is unclear.

*& Co. v. Finley*, 103 Ill. App. 3d 774, 776 (Ill. App. Ct. 1981); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[T]he right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."). As one district court recently explained, "[w]ithout the ability to maintain confidentiality during certain proceedings, state courts could not 'adjudicate the matters before them' lest public disclosure chill the candor those courts depend upon." *Gristina v. Merchan*, 2022 WL 1597732, *3 (S.D.N.Y. May 19, 2022) (citing *Cavanaugh*, 28 F.4th at 434). Here, resolving Jenkins' claims challenging the confidentiality findings in his ongoing State-Court Case would interfere with the Illinois court's administration of its duties, providing an additional reason for finding that this case falls within the third category of exceptional circumstances identified in *Sprint*.

Having found Jenkins' civil state court proceeding falls within one of the three *Younger* abstention circumstances, the Court must now assess whether the state proceeding is ongoing, involves important state interests, and provides an adequate opportunity to raise constitutional challenges. *Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at *2 (7th Cir. Jan. 17, 2023). All three factors are easily met. First, as previously discussed, Jenkins is currently pursuing an appeal. As such, his State-Court Case is ongoing. Second, state courts have important interests in administering certain aspects of their judicial systems, including the contempt process, determining whether a judge should be recused, and what matters warrant confidentiality. Third, Jenkins has had, and

continues to have, opportunities to raise any federal challenges to his State-Court Case in the state proceedings.

As such, the Court finds that abstention under *Younger* is warranted in the instant case.

***3. General Principles of Federalism and Comity***

In the event that the Court is mistaken about whether Jenkins' State-Court Case falls within the third category of cases where *Younger* abstention is appropriate, the Court briefly addresses whether abstention is warranted under the Seventh Circuit's recent decision in *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021).

In *Woodard,* the Seventh Circuit explained that, even when established abstention doctrines are "not a perfect fit," generalized principles of federalism and comity may independently support a federal court's decision to abstain from exercising jurisdiction. *Woodard*, 997 f.3d at 720-25. In *Woodard*, the plaintiff sought to bring claims relating to a state-court order suspending the plaintiff's parenting time. The Seventh Circuit considered several abstention doctrines, finding that none of them was an "exact fit." *Id.* at 723. Nonetheless, the Appellate Court held that the district court properly abstained from exercising jurisdiction over the case because, "under the foundational principles of our federal system," a federal court should not exercise jurisdiction in a way that interferes with an ongoing proceeding in state court. *Id.* at 723, 725. More specifically, the Seventh Circuit held that because "granting declaratory or injunctive relief would provide [the plaintiff] with an offensive tool to take to state court to challenge that judge's orders … federal courts need to stay on the sidelines." *Id.* at 723. As further support for

abstention, the Seventh Circuit found that "federal adjudication of [the plaintiff's] claims would reflect a lack of respect for the state's ability to resolve the issues properly before its courts." *Id.* at 724.

If the claims in *Woodward* warranted abstention to prevent providing the plaintiff with an "offensive tool to take to state court to challenge that judge's orders," abstention is surely warranted here, where Jenkins sues, among others, the judge presiding over his State-Court Case, and asks this Court to (1) issue orders regarding the constitutionality of the presiding judge's decisions and actions, (2) find that decisions rendered in his State-Court Case are void, and (3) enjoin the state court proceedings. If this Court were to inject itself at this juncture and adjudicate Jenkins' alleged constitutional claims, it would undoubtedly be interfering with Jenkins' State-Court Case. The undersigned will not allow Jenkins to leverage this court as a sword to prevent the state court from enforcing its orders and judgments.

**V. Conclusion**

In accordance with the Anti-Injunction Act, the *Younger* abstention doctrine, and/or general principles of federalism and comity as discussed in *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021), the Court declines to exercise jurisdiction over this case.

Having found that abstention is warranted, the appropriate procedure is to either stay the case pending the resolution of the state court action, or to dismiss it in its entirety. *See FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 600 (7th Cir. 2007). In determining whether to stay or dismiss, the "pivotal question" facing the Court is "whether any of the relief sought by the plaintiff in its federal action is unavailable in the state

action." *Id.* Here, liberally construed, Jenkins Complaint seeks both injunctive and declaratory relief invalidating the decisions rendered in his State-Court Case. Illinois courts are capable of granting such relief. As a result, the Court concludes that dismissal is the appropriate course of action.

Finally, The Court **DENIES** Jenkins' motion for leave to proceed *in forma pauperis*.

This matter is **DISMISSED** without prejudice. The Court **DIRECTS** the Clerk of Court to enter judgment and to close the case.

**SO ORDERED.**

Dated: May 9, 2023

DAVID W. DUGAN
United States District Judge